May it please the court, Brandon Moon spent 17 years in prison for a rape that he did not commit. He was exonerated in 2004 after DNA evidence proved that he had been innocent all along. Moon spent those 17 years in prison because defendants manufactured a rape case against him based on false statements and a suggestive lineup. This is an appeal from a summary judgment dismissing Moon's state law false imprisonment claims. That's the only thing at issue in this case is this false imprisonment claim, right? There's no 1983 or anything else. It's a pure state law false imprisonment claim. That's exactly right, your honor. It's a pure state law false imprisonment claim. We're asking this court to reverse because Moon raised disputed issues of fact over every issue in this case. But the district court's order ignored Moon's evidence, adopted defendant's version of events as true, and even conjured up an official immunity defense on defendant's behalf. Applying the correct standard review on summary judgment, Moon is entitled to a trial. I'll start with his claims against defendant Olivarez. A jury could find on this record that Olivarez instigated Moon's arrest by suggesting him as a suspect without evidence and then providing statements to the jury. And just to contextualize all of the instigation evidence against Detective Olivarez, I want to put the 48-hour timeline front and center. The record would support that the first thing that Detective Villa did when he was assigned the DM case was walk over to the burglary office and start talking to Detective Olivarez. At that point in time, the record would also support that Detective Villa had yet to interview the victim, DM. He had yet to work with her on a composite sketch. I'm going to interrupt you just because your brief, especially your reply brief, is 10 pages about the disputed evidence. We have that. What I didn't get as much from was the Texas law as to what equals instigation. You cited Walmart, but that is this call for an arrest, request an arrest. And the principal brief you cited, 1939, Schnaufer decision? Yes, Your Honor. But what's the best case that suggests that, let's accept your facts, wrongful ID, guy's got a criminal record when he doesn't. If you still have DM coming in and identifying them from a photo ID, what's your case that that early inception stuff equals instigation? Your Honor, this is straightforward application of the rule in Walmart. So what Walmart explains is that under Texas law, there are two ways that a plaintiff can prove instigation. The first way I'll call the traditional instigation approach. And under that approach, the plaintiff has to come forth with evidence to show words or conduct that encourage, influence, or persuade the arrest. Conduct akin to, in the arrest context, arrest this man. But there's also a second pathway, and I'll call that the false statement pathway. And under that pathway, if the plaintiff can show that the defendant made statements to law enforcement that he knew were false, then law presumes that that defendant instigated the arrest. And what's your best case for that second pathway? Walmart. It's a straightforward application of the rule in Walmart, even though the holding in Walmart found that there were no knowing false statements made in that case. They acknowledged that that was the pathway that we're seeking to apply here. Because the other case you cited, Schnaufer, that was the same thing. There was a wrongful ID, but it had nothing to do with the arrest. So if you have any case where they've actually said the police officer's wrongful statements actually did qualify for willful detention. Your Honor, we don't have any cases on point that address police officers, because as Judge Englehart alluded to, normally those cases are brought under the 1983 context. But one case that we do have is the Hornsby case, which is referred to in the Walmart case. And the Walmart case points to Hornsby to say that if knowing false statements are made, then those knowing false statements are presumed to cause the arrest. And so while we don't have a case on point that involves police officers, the facts of this case suggest that a straightforward application of the rule in Walmart applies for both buckets, the traditional pathway and the knowing false statement pathway. And so I'll try to put those evidence in both of those buckets. But so you're saying there's no such thing on the first prong of false imprisonment similar to intervening, breaking the causation. The difficulty here is, of course, it looks like from the facts that DM is the one that looks at a photo array that I don't think Olivares had anything to do with and says that's the one. And that leads to the arrest. Your Honor, removing Olivares from the equation and Moon's photo never gets in front of DM. So the only reason that Detective Villa pulled that photo is because Detective Olivares suggested that he do so. So during that first conversation in the burglary office at the time when he had yet to interview DM and before there was a composite sketch and before he'd ever even heard of Brandon Moon, Olivares suggests that Villa look into Moon and advises him to go pull a black and white photo from the database. And that's the photo that ends up in front of DM. And she doesn't make an identification, just to be clear, Your Honor. She makes an uncertain and tentative choice of Moon's photo. And that is later, that tentative identification is then falsely stated to have been certain in later reports. The record would suggest that Olivares wouldn't even further. But tell me why this is just ordinary police work. I mean, where is the evidence that you would have that somehow this was improper? The evidence that we would, we would put forth is that Olivares made false statements to Detective Villa that he knew were false. So I want to highlight three specific statements that Olivares made to Villa to bolster his suggestion that Villa look into Moon. The first statement comes from Detective Villa's report, which says that Moon had a criminal history of aggravated sexual assault. We know that statement has to come from Detective Olivares, because at this point in the investigation, Detective Villa had spoken to nobody else about Moon. Tell me what's wrong with it. Where is the, where is the fallacy of ordinary police work in that statement? Because, Your Honor, that statement is objectively false. Moon had no criminal history. He'd never been convicted of a crime, let alone a crime of aggravated sexual assault. Well, I mean, we had somebody that was arrested for this. Why don't you check him out? I mean, in that, where is the, the intentional conduct that would amount to some kind of liability, constitutional or otherwise, with respect to that kind of statement? I just don't get it. Well, Your Honor, the statement has to be looked at in context. So six weeks before Detective Villa approached Olivares in the burglary office, remember that Olivares had tried and failed to get Moon convicted for burglary. And after the acquittal in that Marquez case, Detective Olivares approached Moon outside of the courthouse and threatened to get him. So a jury could conclude on this record that when Olivares not only suggested that Detective Villa look into Moon, but then bolstered that suggestion with a false statement that Moon had a criminal history of aggravated sexual assault, that he was doing that to get Moon arrested. He did have a record, did he not, of sexual assault? I mean, of arrest for sexual assault. He was, he had never been convicted of sexual assault. I'm not that. In 1984. What is wrong with the police saying, you need to investigate that guy. We arrested him for something else the other day. And I mean, that may be a potential lead. And here's somebody claiming that they've been raped and you're trying to find out who did it. And, you know, you don't go to the First Baptist Church to find out who did it. So it seems to me, go to the people that have been arrested for similar conduct as ordinary police were. The point here, Your Honor, is that on this record, a jury could conclude that Olivares intentionally made the false statement that Moon had a criminal history of aggravated sexual assault for the purpose of getting Moon arrested to deliver on the very threat that he made on the courthouse steps after the Marquez acquittal. But the we also see that Detective Villa included the statement in his probable cause affidavit that says that Moon had a modus operandi, quote, identical to the modus operandi of DM's assailant. That statement is false and it has to refer to the 1984 allegation against Moon because as Dove stated in his deposition, no connection had been made between Moon and the KN case or the KN case and DM at that time. I guess I'm still stuck on, let's say Olivares had said, that composite looks just like Steve Higginson. And by the way, Steve's got a criminal record. Those are your primary facts. And then let's assume the victim never comes in and sees a photo array. Then I see Olivares as an instigator. The rest weren't based on that. But here, all it does is put Moon in a photo array and DM comes in and says whatever level she said it was sufficient to get probable cause. Two clarifications, Your Honor. The first being that the record would support that under any timeline supported by this record, the composite didn't exist at the time that Olivares suggested Moon as a suspect. But still, I'm saying yes, instigator, except for intervening, DM comes in and Olivares had nothing to do with the photo array, right? He wasn't there. He didn't talk to her, right? Did he ever talk to the lady? Olivares never talked to the lady. So I guess, again, I just keep pressing that one point. The willful detention comes from via getting sufficient probable cause from the eyewitness victim, whether or not someone else got Moon in the array. So, Your Honor, in Walmart, what the rule states is that if the officer or the defendant provides a false statement, and they know that statement is false, the law presumes that the subsequent arrest is caused by that false statement. Instigation causation is satisfied. There's no discussion of intervening cause, and if you lie to a law enforcement officer, you can't then point to the person that arrests the suspect and say, oh, you know, that's the person who intervened and caused the arrest. That's a straightforward application of Walmart. And just to be clear, again, DM didn't make a positive identification of Moon from the photo lineup. She made a tentative and uncertain photo identification, and then Detective Villa says that that's certain later, but it wasn't certain. So that wasn't probable cause. Moving to Dove, I'm just going to tell you my difficulty. I think I know the record, but my difficulty is legally. And primarily it's in the reply brief that you begin to say, well, her willful detention of Moon was that he was continued in detention. Do you have a Texas false imprisonment case? The only case you cite is a federal case, Goode v. Curtis. Do you have a Texas case that stands for that proposition? We don't have a Texas case that stands for that proposition, Your Honor, but this is, again, a straightforward application of Walmart because aside from the suggestive lineup, there's also evidence that Dove made false statements, statements that he knew were false, to law enforcement. And we have several examples of that. First, in his affidavit for a search warrant for Moon's bodily fluids, he refers to Moon as a burglar. That's not an arrest warrant. That didn't get him arrested. That just got his bodily fluids. That got his bodily fluids. But our position is that Moon was unlawfully arrested because he was arrested without a warrant. So he was already there unlawfully. And then all that Dove learned after that were facts that dissipated probable cause. Do you have a case that says even if there's probable cause to arrest willfully detained, that's not valid if it has otherwise a Fourth Amendment problem? It was a warrantless arrest because the record doesn't contain the arrest warrant. See what I mean? Assume probable cause to arrest. Is that somehow insufficient for false imprisonment? So in this case, probable cause is insufficient because Moon was arrested in his home. And so the element in this case is that Moon has to demonstrate that he was arrested without lawful authority. There's at least a fact issue on whether Moon was arrested without lawful authority because he was arrested in his dorm room at 410 in the morning, and there's no warrant in the record. Defendants concede there's no warrant in the record at page 21 of their response. You still can't. You would agree, for Dove to have liability, you still have to prove that first element. That he doesn't have probable cause, or without lawful authority? No, willfully detains. Oh, yes. And somewhat simplistic, but I'm not criticizing, argument is, well, her involvement is after the arrest. He was already willfully detained. So then I think your argument has to be, well, it applies if you continue a detention. I didn't see you cite a case for that anywhere. Do you have a case for that? We don't have a case for that, and that makes sense, Your Honor, because, again, these cases typically come up in the 1983 context, and so we don't have cases involving officers. But if we take just the elements, again, backing up and looking at the willful detention, what it requires under Texas law, again, there's two pathways. So Dove obtaining a misidentification from DM is conduct that encouraged his continued detention. Continued. His continued detention. Because, well, he was not being detained lawfully, so it's not even, it's just sort of a continuum, right? But you probably have a point or two. Do you want to make limited time? I just want to touch briefly on the suggestive lineup. So Dove, there's evidence in the record from which a jury could conclude that DM misidentified Moon because of three suggestive tactics deployed by Dove. First, that he encouraged DM's misidentification through repetition. Second, that he used officers in the lineup instead of inmates in violation of department policy. And third, that he also violated another department policy by failing to separate the witnesses. And we don't even need to evaluate whether or not at this stage they were unduly suggestive or were the cause, because on summary judgment, according to Goodby-Curtis, we presume that these suggestive tactics were what resulted in the misidentification. That's because this is an exoneration case. And so we presume on summary judgment that the misidentification was a result of the suggestive tactics deployed by Dove. I'll reserve. You have rebuttal time. Thank you, counsel. May it please the court, counsel. Your Honors, not only was there no false statement in this case to constitute instigation, there was no causation from the statement that was made to cause the arrest. So what the trial court said is, despite the 17 years of jail, which is, of course, a tragedy, and nobody would contest that, there's simply no facts that connect these two individuals, and particularly now Sal Olivarez that I'm speaking of, to that 17 years. Both engaged in perfectly decent professional police work, and just through misidentification. Well, they just have to create a dispute of fact that it wouldn't be decent police work if Olivarez had a vendetta and he misstated that the fellow had a felony criminal record, and then he stated with certainty that's him. Those would not be decent police work. So if we're just asking if there's a dispute of fact, it seems like they've raised disputes of fact as to those two. So my difficulty, you heard me with opposing counsel, is I don't know Texas law on false imprisonment. What's the case that you say shows that even assuming those facts, he wasn't an instigator? Well, specifically I have no case for that. So neither side can give me a case. Well, I can, your interpretation of the record is not correct. Let me read, this is the verbatim allegation contained in the appellate's brief. He, Sal Olivarez, then explained to Villa, Detective Villa, that he had read a rape case on this same subject, Moon, from 1984, and also booked him for burglary of a habitation around November of last year. He told him to check the computer to find the PD number. That's it. There's no felony conviction. There's no... I thought the brief said he said he resembles Moon, but in fact they have evidence that he said this is Moon. Wrong? No, well, the question was put, you know, we've got depositions, we've got case reports, we've got people who were not involved in the conversation who learned from reading other accounts, and so it being asked over and over, that's what is said in the brief, what I just read. That's what... I'm not focusing on the criminal history. I'm focusing on whether Olivarez said a man who has been proven after 17 years of jail to be innocent was in fact the one who did the rape. No, he never said any of that. Never said that, okay. Nothing like that. He didn't say this composite is like... Similar. Similar. And the closest to what you're saying, I think in one police report he said, it seemed to me to be Brandon Moon, or it looked to me, or, you know, there was certainly a suggestion of this is my impression, not this is an incontestable fact. There's nothing in the record that he ever said, that is Brandon Moon, go arrest him. Let's say, this is a hypothetical, but I just need to understand Texas law again. Let's say the victim, DM, had never come in for a photo array, but instead, Via had said, oh, you say this is similar to Moon, and goes to get an arrest warrant. Would he be an instigator? No. Olivarez would not be an instigator in that circumstance? If he said, that looks like Brandon Moon, go arrest him. Yes. Yes. What about that looks like Brandon Moon, and Via then goes to arrest him? No, because it would take an order, right? If Via makes the independent decision as a police officer that, well, if this looks like Brandon Moon, then to me, because, you know, the whole concept of an instigation, it's essentially a direct false imprisonment. No less than putting the handcuffs on yourself, except you work through an intermediary. Right, but she's not relying on, oh, go arrest him. She's relying on the Walmart concept of, if you, like Iago in the play Othello says, oh, maybe you better look at Othello. Right. Right. Isn't that the suggestion here? And if they have evidence that before Olivarez was saying, I'm going to get you, and then he sort of says to Via, boy, this sure looks like this guy, and then he ends up in the photo array. And I'm saying, no, not an instigation. Absolutely not. Absolutely not. What you're suggesting in the Rodriguez case and all subsequent cases have made a distinction of sort of leaving a false impression versus making a false statement. And what, at worst, Mr. Olivarez did do, and this is not a contest, he said, that looks like Brandon Moon. You can read a rape case about him, and I arrested him for burglary. All true. Or at least look at Brandon Moon. It looks like Brandon Moon. I mean, that's a matter of opinion, I suppose, but there's simply no false statement. And it's an over-reading of the Rodriguez case to suggest that any false statement that but for causation, but that starts the dominoes that results in an arrest, can be actionable. That's simply not true. It's the false statement that must cause it. I hear you, and that's relying on the fact saying there wasn't a false statement. There isn't even a dispute of fact as to it. Are you separately relying on the fact that DM comes in and says, I recognize this felon, or are you not? Oh, certainly. And what's the case that has Texas law again that breaks causation? If there were instigation at the beginning, can it be broken by the victim's eyewitness statement, yes or no? Yes. And do you have a case for that? Well, can I sort of restate to make sure I understand the question? Every instigation case is part of the sort of, you know, it's the equivalent of, look, arrest that man says. There can be no independent police discretion exercised between the instigation and the arrest. And so if an officer puts together a lineup and a witness comes and makes an identification, that absolutely breaks. That makes sense to me. And it's a neat rule of law, independent police discretion leading to arrest. What's the case? Well, it is in Wal-Mart. All right. You want to move to Dove? That's fine. So Jeffrey Dove, as you know, had nothing to do with the arrest of Mr. Moon. And, in fact, he had investigated another rape, another sexual assault some years before, and they found no suspect. And so when Mr. Moon was arrested and he was identified and incarcerated, because there was a tentative identification by Diem, because she said, I think that's him, but I need to see him in person, well, at that point, what are your choices? Either you drop the case because if you identify him again, then you get an allegation of suggestiveness, or you try to prosecute just on that tentative identification, or you do the obvious thing, which is arrange a lineup so that the victim has a chance to see the person – to see the possible perpetrator in person. It wasn't a show-up. They didn't bring her a photograph and say, is this the guy? They put together a lineup. I have pictures of the lineup I could give. No, it's in the record. The line's in the record. It is in the record. And he did choose four other police officers because the inmate population didn't have white Caucasians similar to – I don't think, unless I'm wrong, the suggestiveness is that they used police officers for us inmates. The problem is if you're going to do a photo array, you need to do at least one other person from the original array. Otherwise, when she says, well, could you put a cap on him? He looks exactly like he does in the photo array. It's the same guy. Well, that is an issue, and there are many cases that address this issue of suggestiveness of multiple lineups. But one, it's inevitable. I mean if you are going to have two, he has to be in both. So that part of it is inevitable. Secondly, the place where they got their initial photographs, according to Detective Villa's testimony, was from arrestees of potential sexual assault crimes. And so it wasn't really possible, at least according to these individuals who are putting the lineups together, to obtain one of the same individuals from the photo lineup which had been created over many years of arrests and have them present in the second. Certainly, there were reports that indicated, you know, I mean it was not a secret the way these lineups went. Mr. Moon's defense counsel had access to the information. I'm sure he argued or could have argued this is a suggestive lineup. He could have argued it should be suppressed. Well, I read the trial. He asked DM, he asked, he's the only person you saw twice. But her answer was devastating. He's the man I saw in my hallway. How do you cross? Jury thinks, wow, this is an ironclad eyewitness ID. Well, you suppress – well, that's a good question. But as I understand criminal law, and I don't necessarily, but you can't offer an in-person ID if the pretrial ID was suggestive. I think – Oh, so you say move to suppress it. Yes. I think that's what he would have had to do. But the long and short of it, yes, they are complaining. They had three complaints. One was that he used officers. One was that there were multiple lineups sequentially. But under the circumstances, what else could you do? I mean they were investigating a series of rapes in El Paso. This wasn't like a minor misdemeanor. I mean this is a crucial investigation. And so when they say they didn't have probable cause to arrest in his home, they considered it to be exigent circumstances. They – this was a serious situation. But that's not even necessary to absolve these two individuals what the lineup – the way – Wait, wait, wait. Just because we've got to be accurate on the facts. I think I remember reading this whole record. They go to the dorm room and they're waiting and waiting and waiting. I don't remember it was an exigent circumstance. Well, I – The roommates in there? Yes, yes. So when you say exigent circumstances, is that truly what they argued about? Well, you know, I say that because of the severity of the situation, of the – Exigent circumstances is usually hot pursuit. They were watching. I appreciate that. I appreciate that. But how couldn't – if we're talking about the third prong of false imprisonment? Yes. I think that was lawful authority. Yes. You agreed that the arrest warrant's not in the record. How can anyone say whether it was about – Well, if there's probable cause – And that comes from DM's – Yes. That comes from DM's phone? Yes. Yes. Okay. An eyewitness identification – and, again, the record is very clear and consistent and honest that nobody said that she picked him out with certainty. Every witness statement says she said, I think that's him or I'm pretty sure that's him. But I need to see him in person. And so I think – But you saw him at the lineup. Did she say that's him or did she not know until she asked for the caps to be put on? Do you remember? She did both. She said that's him, but I need to be more sure so can they put the caps on? And then she said it's him. But, yes, she did. The identification was positive. We put the trial record in because, you know, for some misidentification or for some suggestive lineup, the question is, well, did it affect the overall reliability of the identification? And they go into how much time she had. And I thought it was persuasive that the detail with which she testified at trial of the facts of her assault. So as to the final – my final point, Your Honors, I think, is as to the not separating the witnesses, it's also clear, and the trial judge said this, but it's clear from the record that there were three officers arranging that lineup. Mr. Dove had one responsibility, and that was to bring in the prisoners and have them, well, collect the lineup, first of all, was his, and then bring them in, have them turn, take them out. He didn't – he did call in Cayenne, which was the one he was investigating, but once the witnesses were there, Detective Villa and Detective Saucedo were the ones that arranged for them to sit, wait, inspect, identify, leave. He had nothing to do with that. And he's being sued in his individual capacity as is Detective Olivares. And so it would be improper to hold him responsible for any errors. As he testified, I only found out later, maybe much later, we don't really even know, that they had been allowed to sit together, although the other two detectives put in their statements they did. These arguments are mostly saying there's not even a dispute of fact as to suggestiveness, but are you also saying that Dove couldn't be liable because Moon had already been arrested? I'm saying there was probable cause for his arrest. The – let me answer. I'm unclear. I don't really understand the theory. He did participate in the lineup. He didn't arrest. So what are the parameters of his alleged tortious conduct? I mean, where's the beginning and ending, and where's the beginning and ending of the injury is unclear to me. I don't know exactly how they're defining that false arrest or false imprisonment. You raised it primarily in the reply brief, so I wanted to see what your thought is. The thought is that the victim is tentative, and the arrest occurs on something tentative. Is it true, then, the officer assuming facts that was suggestive that gets the more certain identification is willfully detaining him because by virtue of that suggestive lineup, there's a continued detention? He was not the officer in charge. I don't believe that he could be responsible for the continued detention for his role in the lineup. I do want to point out that the trial court did find immunity. There is immunity under Fifth Circuit law for state court torts asserted against individuals. The trial court was correct. Of course, any alleged misconduct, they, of course, have a greater latitude to act as officers. That's the whole significance of immunity is they get the opportunity to make mistakes. As long as they're reasonable mistakes conducted in the course of their regular duties, and there's no argument really, certainly not against Jeff Dove, that there was anything done with malice. He and Detective Olivares, I just want the record to be clear, they never spoke about this case. There's no conspiracy. Joe Villa was in charge. Sal Olivares made one statement at the beginning and then never was involved again. And Jeff Dove did one thing. He actually did two things. He also took him to get the bodily fluid examination, thank God, or he would still be incarcerated. But if you read Mr. Moon's account of the lineup and every interaction he had really with both men, it was absolutely professional and polite, with the exception, as we know, at the 11th hour, he changed one significant allegation, which is for 20 years he had maintained that Joe Atboas, the prosecutor, came up to him after the trial and said, we're going to get you. And then when all the other defendants were dismissed, he said, oh, no, no, now I remember it was Sal Olivares. But yes, that really concludes my presentation. As I say, the trial court just said you can't get there from here. There is not enough links in the chain to hold either of these men responsible for instigating a false arrest, and his judgment should be affirmed. Counsel? Rebuttal. Am I pronouncing your last name right, Diddy? May it please the court. I want to address a couple of things that were just raised. The first is that defendants say that probable cause was enough to arrest Moon, and that's just not right. Fourth Amendment requires that a warrant issue for Moon's arrest if he were to be arrested in his home. They are now alleging exigent circumstances. They have never pleaded that, and the facts of the case just don't support that. They were, as you suggested, waiting around while Brandon Moon was in his room to arrest him. The other point that was made, that there is no evidence in the record that Olivares affirmatively identified Moon, and that's not right either, because Record Excerpt 6 shows that Olivares, in his own words, says, I recognize the subject to be a Brandon Moon. And on top of that, Record Excerpt 6, the comments that were made about how Olivares merely commented on a composite sketch, or commented on the fact that he booked him for burglary, those accounts are Olivares' ratcheted back, self-serving statements about what happened during that conversation. Other evidence in the record would support that Olivares definitively identified Moon, and that he then bolstered that identification with three false statements. One, that Moon had a criminal history of aggravated sexual assault. Two, that Moon had a modus operandi identical to the modus operandi of a DM's assailant. And three, that he was a burglar. All three of those statements are false, and Olivares knew all three of those statements were false, because he researched Moon when he was investigating him in the Marquez burglary, and he found out that the 1984 rape allegation against him had been dismissed, and he was present for the Marquez acquittal, so he knew that Moon was not a convicted burglar. Stepping back, Your Honor, I just want to contextualize the district court's order. While you're right, there are so many fact issues in this case, and they are complicated fact issues, what is not complicated is the law in this case. This law is a straightforward application of the summary judgment standard. All Moon has to do to be entitled to a trial is to identify disputed issues of fact. He's done that with respect to Olivares, and he's done that with respect to Dove. That is all that's required of him. He has met his burden. If we look through the district court's order, it reads like a catalog of defendant's evidence with no reference to Moon's. That's improper. I guess I'm still – and it will be my job to research, but I'm still – Walmart is the agreed-upon case law, but Walmart – I mean you would think there would be lots of cases on the theory that you're suggesting, which is some early cop in the precinct, they say, oh, he looks like Steve. Well, every time that equals instigation, if it's wrong, or does it have to have this malice component? But I don't see any false imprisonment cases built on that inception. I think you better check this guy. And then they go through it and they get other PC to arrest. Your Honor, the reason that we don't have any cases directly on point in Texas is because these sort of situations involving police misconduct arise in the 1983 context. And in the 1983 context, it would be pretty clear that if an officer instigated arrest through false statements or affirmatively identified a suspect without any reason or to deliver on some vendetta that he had against the suspect, that would be a clear violation under 1983, a clear false arrest claim. Just because there's substantive due process case law doesn't mean Texas would accept this theory under false imprisonment. I think that the court would need to make an eerie guess on that, knowing that we don't have a case directly on point, but, again, it's a straightforward application of the rule in Wal-Mart just to this set of facts. I'm making you repeat yourself. You've got a minute. You probably had other points you wanted to make. I just want to touch briefly on the defenses in this case. Just to be very clear, defendants have waived their official immunity defense not once, twice, but three times, first by failing to brief it in Moon One on appeal, second by failing to brief it on remand on summary judgment, and third by failing to brief it to this court. Instead, they continue to insist on qualified immunity, which is a distinct and non-overlapping federal doctrine, doesn't apply to this case. With respect to the independent intermediary doctrine, again, there are no Texas cases applying that federal doctrine here, and it was waived by failing to be briefed in Moon One. Even if the independent intermediary doctrine applied to this case, it would be precluded because of the taint exception. There's evidence that defendants' misconduct tainted the process so that the causal chain was preserved. Just to conclude briefly, Your Honor, this is not a summary judgment case. There are plenty of fact disputes that preclude summary judgment. Moon has pointed to those fact disputes. He is entitled to a trial. Thank you, Your Honor. Thank you all. We appreciate it.